IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> PRESTON FREDERICK LAHMER, <br><br> Defendant. | CR 16–27–M–DLC <br><br> ORDER |

Defendant Preston Frederick Lahmer ("Lahmer") moves the Court to suppress all statements and evidence obtained in violation of his Fifth Amendment rights. For the reasons explained below, the Court grants Lahmer's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Lahmer was arrested near the Canadian border on June 9, 2016, on suspicion of drug trafficking. Lahmer is a 25 year old Canadian citizen. Following his arrest in a forested area near Libby, Montana, he was taken to an interrogation room at the Flathead County Sheriff's Office in Kalispell, Montana. There, two agents with the Department of Homeland Security Investigations Division ("HSI") began Lahmer's interrogation. The interrogation started around 7:32 p.m and lasted forty-five minutes. It began with a discussion about the

amount of time Lahmer was facing if he was found guilty. The officers told Lahmer he would be facing a mandatory minimum due to the amounts of drugs found at the scene of his arrest. The agents further explained that Lahmer is eligible to receive a much lower sentence if he cooperated with law enforcement. During this discussion, Lahmer was visibly upset and stated that he was concerned for the safety of his family if he cooperated. The officers assured Lahmer that his concerns for his family were unfounded and continued to discuss the benefits of cooperation. At around 7:40 p.m., Lahmer was read his *Miranda* rights and signed a waiver of those rights. When he was signing the waiver, the officers continued to assure Lahmer that was he was eligible to receive the benefits of cooperation. Less than two minutes later, at around 7:42 p.m., the following discussion took place:

> Lahmer: Look, I'm going to be Honest. I appreciate everything you guys have said. I'm not saying I'm not cooperating, trust me, I'm not, because I do appreciate the offer.
>
> HSI: You want to know what that window we talked about is?
>
> Lahmer: Yes
>
> HSI: Okay. The window of opportunity before there is a grand jury and indictment coming is roughly, what, what are we thinking – (other agent) you got pretty low time because I'm taking you to see the judge tomorrow, so it's a few weeks after that.

> Lahmer: So there's no way I can just speak to a lawyer to at least see what I got going on, tonight?
>
> HSI: I'll tell you what, here's the deal.
>
> Lahmer: I promise I'm not fucking you guys.
>
> HSI: No, no, no. Here's the deal, here's the deal, alright? And I promise I'm not bullshitting you, because if you want a lawyer more present to you, I'm just telling you how it works . . .

The interrogation continued with a discussion about the "window of opportunity" for Lahmer to cooperate and how that window would close relatively quickly unless he cooperated. The officers stressed that his cooperation needed to be timely. The interrogation then continued:

> HSI: [S]o that's kind of how it works. Does that make sense?
>
> Lahmer: No, it does. I'm just saying, is there no chance I can talk to a lawyer tonight and then sit down with you?
>
> HSI: Now that you're asking that, I'm going to tell you this right now. Tomorrow morning, I'm going to pick you up, alright? I'm going to take you to Missoula to the Federal Courthouse, okay? You're going to be given an opportunity to talk to a court-appointed attorney tomorrow.
>
> Lahmer: Okay. What if I want to pay for one, how do I do that?

One of the officers then explained how Lahmer was previously asking about retaining a Canadian attorney to represent him. The officers replied that he needed to discuss that with his court-appointed lawyer tomorrow. The interrogation

-3-

continued and Lahmer eventually made incriminating statements.

## DISCUSSION

Under the seminal case *Miranda v. Arizona*, the United States Supreme Court held that law enforcement officers must abide by certain rules and guideline to protect the rights of the accused during custodial interrogations. 384 U.S. 436, 441–42 (1966). In particular, these rules and guidelines enforce the Fifth Amendment's guarantee that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *Sessoms v. Grounds*, 776 F.3d 615, 621 (9th Cir. 2015), cert. denied sub nom. *Arnold v. Sessoms*, 136 S. Ct. 80 (2015) (quoting U.S. Const. amend. V). The *Miranda* Court was concerned about the "inherently coercive" nature of modern custodial interrogations and found "that statements made under those circumstances are inadmissible unless the suspect is specifically warned of his . . . rights and freely decides to forgo those rights." *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989) (internal quotation marks omitted); *see also Miranda*, 384 U.S. at 455 ("[T]he very fact of custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals.").

"To ensure that the use of such psychological tactics to exploit a suspect's vulnerabilities do not run afoul of the Fifth Amendment, *Miranda* set a clear

bright-line rule: 'Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney. . . .'" *Sessoms*, 776 F.3d at 622 (quoting *Miranda*, 384 U.S. at 444). If the interrogatee "indicates in any manner and at any stage of the process that he wishes to consult with an attorney," the interrogation must stop. *Miranda*, 384 U.S. at 444–445.

Invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). Alleged requests for counsel are to be "understood as ordinary people would understand them." *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987); *see also Davis*, 512 U.S. at 459 ("[A] suspect need not speak with the discrimination of an Oxford don."). However, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994) (emphasis in original).

Here, Lahmer argues that he made two unequivocal requests for an attorney. First, when he asked, "So there's no way I can just speak to a lawyer to at least see

what I got going on, tonight?" Second, when he stated, "I'm just saying, is there no chance I can talk to a lawyer tonight and then sit down with you?" Specifically, Lahmer contends that he was asking the agents if he could talk to an attorney before continuing with the interrogation.[1]

The Government disagrees and contends that Lahmer did not clearly and unequivocally invoke his right to counsel. Instead, the Government states that these statements were little more than procedural questions aimed at finding out *when* he could talk to an attorney. The Government asks this Court to apply *Davis v. United States*.

In *Davis*, the defendant was informed of his constitutional rights and executed a waiver. 512 U.S. at 454–455. After speaking with investigators for ninety minutes the defendant said, "Maybe I should talk to a lawyer." *Id.* at 455. The United States Supreme Court found that this statement was not a request for

---

[1] Lahmer also makes a secondary argument where he contends that the HSI agents unconstitutionally misled him about his rights and stonewalled his requests for counsel with their so-called procedural answers. However, the Court need not reach this issue because, as discussed *infra*, the Court finds that Lahmer made two unequivocal requests for counsel. However, the Court notes that the failure of the agents to read Lahmer his *Miranda* rights immediately at the outset of the interrogation and their possibly misleading discussion about the benefits of cooperation are concerning to the Court. In particular, the stress the agents placed on the need for Lahmer to timely cooperate in order to be "safety valve" eligible. Under United States Sentencing Guideline § 5C1.2(a)(5), codified at 18 U.S.C. § 3553(f)(5), a defendant only needs to provide information to the Government at the time of sentencing in order to be "safety valve" eligible.

counsel. *Id.* at 462. Instead, the Court determined that the defendant's statement was equivocal and ambiguous, and held that unless a suspect makes a clear request for the assistance of counsel, law enforcement need not end the interrogation. *Id.* at 459.

In contrast to *Davis*, Lahmer argues that this case is instead on point with *Sessoms v. Grounds*.[2] There, the defendant assisted in a burglary where a man was murdered. He turned himself in to the police on the advice of his father and was placed in an interrogation room. *Sessoms*, 776 F.3d at 618. Forty second after two police officers had entered the room, the defendant asked, "There wouldn't be any possible way that I could have—a lawyer present while we do this?" *Id.* at 617. This statement was immediately followed by, "Yeah, that's what my dad asked me to ask you guys . . . uh, give me a lawyer." *Id.* at 618. The officers did not stop the interrogation and continued to question the defendant. He eventually made incriminating statements. The Court of Appeals for the Ninth Circuit determined that *both* of these statements were unequivocal requests for counsel. *Id.* at 625 ("Viewing the totality of the circumstances of the interrogation, we conclude that not only did Sessoms claim the privilege twice before being suitably

---

[2] The Court notes that the Government neither addressed nor distinguished *Sessoms* in its brief in opposition to Lahmer's motion to suppress. (*See* Doc. 62.)

warned, he did so unequivocally.").

Here, the Court agrees that *Sessoms* controls and finds that Lahmer made two unequivocal requests for counsel. Importantly, the Court must look to the totality of the circumstances to determine if Lahmer's statements invoked his right to counsel. *Id.* Lahmer, a Canadian national and unfamiliar with the American legal system, first asked about getting an attorney before he arrived at the Flathead County Sheriff's Office. With this information, a reasonable officer would have been on red alert that an attorney was on Lahmer's mind.

Next, Lahmer was visibly upset and under a tremendous amount of strain. The agents immediately told Lahmer that he would be looking at a mandatory minimum and needed to cooperate forthwith or he would not be able to receive the benefits of cooperation. To his credit, in the face of this overwhelming pressure to immediately cooperate before his "window of opportunity" closed, Lahmer asked about speaking with an attorney before continuing the interrogation. At the hearing on the underlying motion, the agent who led the interrogation characterized Lahmer's statements as procedural questions aimed at the mechanics of *when* he would be able to speak with an attorney. The Court disagrees. Lahmer's statements may have asked if he could obtain an attorney the night of the interrogation, but the larger requests were aimed at speaking with an attorney

before continuing the interrogation. There is no ambiguity in Lahmer's requests; he wanted to speak with an attorney, and if possible, he wanted to do it that night.

Additionally, the Court notes how similar Lahmer's requests were to the request of the defendant in *Sessoms,* who asked, "There wouldn't be any possible way that I could have—a lawyer present while we do this?" *Sessoms*, 776 F.3d at 617. Here, Lahmer asked, "So there's no way I can just speak to a lawyer to at least see what I got going on, tonight?" and "I'm just saying, is there no chance I can talk to a lawyer tonight and then sit down with you?" Like the defendant in *Sessoms*, Lahmer "was deferentially asking whether he could have a lawyer." *Sessoms*, 776 F.3d at 626.

Finally, this Court must look at Lahmer's statements through the lens of an ordinary person who is not trained in the law or in the subtlety of grammar. *Barrett*, 479 U.S. at 529. The Court concludes that a non-lawyer of ordinary intelligence would look at Lahmer's statements and conclude that he wanted to speak with an attorney before continuing with the interrogation. There is no other way to view this statement other than "an expression of a desire for the assistance of an attorney." *McNeil*, 501 U.S. at 178. Accordingly, the Court finds that Lahmer invoked his right to counsel and all statements and evidence obtained after this invocation are suppressed.

In conclusion, because the Plea Agreement deadline in this case is set for November 3, 2016, which is only two days away, the Court will extend this deadline for all Defendants in this case in order to allow the parties to evaluate the impact of this decision on the case. The plea agreement deadline will thus be reset to November 8, 2016.

IT IS ORDERED that Defendant Preston Lahmer's Motion to Suppress (Doc. 59) is GRANTED.

IT IS FURTHER ORDERED that the Plea Agreement deadline, previously set for November 3, 2016, is RESET for November 8, 2016.

DATED this 1st day of November, 2016.

Dana L. Christensen, Chief District Judge
United States District Court